Filed 11/7/14  In re T.M. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re T.M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>T.M.,<br><br>Defendant and Appellant. | A142086<br><br>(Contra Costa County<br>Super. Ct. No. J12-01126) |

Following T.M.'s arrest for possession of a firearm and drugs, the People filed a Welfare and Institutions Code section 602,[1] subdivision (a) petition.  The court committed T.M. to an out-of-home treatment program.  After release from the program, while still on probation, T.M. was again arrested for possession of marijuana for sale and for possessing at least six firearms.  The court committed T.M. to another out-of-home treatment program.

T.M.'s counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) (see *Anders v. California* (1967) 386 U.S. 738 (*Anders*)), in which he raises no issue for appeal and asks this court for an independent review of the record.  (See also *People v. Kelly* (2006) 40 Cal.4th 106, 124.)  Counsel attests that T.M. was advised of his right to file a supplemental brief, but he has not exercised that right.

---

[1]  Unless otherwise indicated, further statutory citations are to the Welfare and Institutions Code.

1

We have examined the entire record in accordance with *Wende*. We agree with counsel that no arguable issue exists on appeal and affirm.

## BACKGROUND

T.M. first appeared before the juvenile court at the age of 16 when the People filed a juvenile wardship petition pursuant to section 602, subdivision (a), on July 30, 2012. T.M. had been arrested while in possession of a revolver and packets of cocaine and pleaded no contest to a violation of Health and Safety Code section 11370.1, subdivision (a) (possession of a controlled substance with a firearm). At the August 24, 2012 disposition hearing, the court committed T.M. to the Orin Allen Youth Rehabilitation Facility (OAYRF) for a mandatory six-month program. At a December 11, 2012 review hearing, the court changed T.M.'s commitment to a regular six-month program, making him eligible for release that month. T.M. was released on December 21, 2012, on a 90-day parole, which he completed successfully.

On January 23, 2014, police searched the Antioch, California home of T.M.'s mother, with whom T.M. was living. They found marijuana, a digital scale, another digital scale with white powder residue, and plastic sandwich bags belonging to T.M. They also found "a Springfield XD-40," a loaded .40-caliber semi-automatic pistol, a .38-caliber revolver, a Ruger Redhawk .44-magnum revolver that had been reported stolen, a 12-gauge shotgun, a "Combat exchange 7.62 rifle," and ammunition.[2] Some of the firearms were stored in a hidden section of the attic. T.M. admitted to his probation officer that he began collecting guns about seven months after his release from OAYRF, had sold one gun in order to buy another, and had used some guns to trade for others. T.M. knew that he was not permitted to possess firearms but "did not think he would get caught."

---

[2] The police also found a pistol and methamphetamine belonging to T.M.'s mother, who was also arrested.

On January 24, 2014, the probation department notified T.M. that a probation violation hearing pursuant to section 777 had been scheduled. The court released T.M. to the custody of his father[3] and ordered him placed on electronic monitoring.

The People filed a second section 602, subdivision (a) petition on February 14, 2014. T.M. was charged with (1) possession of marijuana for sale (Health & Saf. Code, § 11359), (2) possession of a firearm by a minor (Pen. Code, § 29610), (3) possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1)), and (4) possession of an assault weapon (Pen. Code, § 30605, subd. (a)). T.M. admitted the first and third counts, and the other counts were dismissed.

Before the disposition hearing, the court received a number of letters written on T.M.'s behalf. Belinda Jo Lopes reported that T.M. was making good progress in psychotherapy and was capable of turning his life around. A former counselor recommended that T.M. remain with his father, where he could work in the family business. T.M.'s aunt stressed his desire to be successful working with his father in the pest control business and to have his own landscaping business in the future. A co-worker at the business attested to T.M.'s hard work. T.M.'s grandmother believed that with his father, T.M. was more positive, had goals, and had good influences. Three others also wrote about recent positive changes in T.M. T.M.'s counsel submitted a brief arguing that T.M. should be allowed to remain in his father's custody.

The probation department report noted that since moving to his father's home, T.M. had received his high school diploma and was working full-time for his father. T.M. was also attending individual and family counseling weekly. He had enrolled in and would soon start anger management counseling. He was attending church and Bible study sessions weekly. T.M. had been compliant with his electronic monitoring. Using the Juvenile Assessment and Intervention System, T.M. had been "classified as having a

---

[3] T.M.'s mother and father had divorced and his father lived in Brentwood, California.

3

low risk level for re-offense, who would benefit from the Selective Intervention (SI) supervision therapy."

However, the probation officer noted: "It is very disturbing . . . that the minor appeared to be completely cooperative (school, curfew, behavior, reporting to Probation, completing his terms and conditions, drug testing, etc[.]) [before his arrest on the current charges] but was actually selling weapons and drugs and storing them in his mother's home. It is also disturbing . . . that the minor did not view guns as violent. He also did not think of the potential consequences of his actions; such as one of his weapons getting into the hands of a young child." The report recommended commitment to the Youthful Offender Treatment Program (YOTP) and stated that T.M. would benefit: "A commitment to YOTP will not only hold the minor accountable for his actions, it will also allow him to engage in programs where he will learn the life skills necessary in order to become a law abiding and productive member of society. He will also hopefully acquire further pro-social skills, learn how to make appropriate decisions and learn further independent living skills. He can also participate in relapse prevention counseling."

At the disposition hearing on May 30, 2014, T.M.'s counsel argued that T.M. should be released to his father. T.M.'s father stated his belief that he "can help [T.M.] the best." The court told T.M.: "I find this case very disturbing. I think the level of sophistication that you exhibited and the manner in which you carried out the most recent offense is unusual for a young person who is reported to have a substance abuse issue." The court considered T.M.'s mixing of firearms and drugs to be "a very lethal combination" that posed "a significant threat to the community." The court told T.M., "Not only did you not learn anything at [OAYRF], you continued to pose a significant threat, even though you were under court order not to do all the things that you were engaged in doing. [¶] I know your dad honestly believes that he can do more for you than the services that could be offered to you by Probation. I wish that I had that same faith, but I don't. I know he believes that. But I don't believe that he can do that, and I think you do need more intensive supervision and services that can be offered through the

4

[YOTP]." The court committed T.M. to a county institution for a period not to exceed the maximum custody time of five years and four months, or until age 21, whichever occurs first. He was ordered to participate in YOTP and to successfully complete all phases of the program.

T.M. timely filed a notice of appeal on June 4, 2014.

## DISCUSSION

T.M.'s appellate counsel represents that the opening brief is filed in accordance with *Wende*. The *Wende* court held: "We conclude that *Anders* requires the court to conduct a review of the entire record whenever appointed counsel submits a brief which raises no specific issues or describes the appeal as frivolous." (*Wende*, *supra*, 25 Cal.3d at p. 441.)

We have reviewed the record in accordance with our obligations under *Wende* and *Anders*, and we find no arguable issues on appeal.

## DISPOSITION

The judgment is affirmed.

STEWART, J.

We concur.

KLINE, P.J.

RICHMAN, J.

5